```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

MARTIN K. HUNT, SR.            :       CIVIL ACTION
                               :
       v.                      :
                               :
CUSTOM CABLE INDUSTRIES,       :
INC., et al.                   :       NO. 10-2625

MEMORANDUM

Dalzell, J.                                    June 7, 2011

Plaintiff Martin K. Hunt, Sr. ("Hunt"), has filed this action against three directors of his former employer, Custom Cable Industries, Inc. ("CCI")[1] -- Gary Jaggard, Gregg Stewart, and Donald Clarke -- for allegedly failing to pay him $425,000 -- being his severance package of $390,000 plus compensation for his unused vacation days -- after he tendered his resignation. Specifically, Hunt asserts claims of breach of contract against CCI (Count I), unlawful withholding of wages against all defendants (Count II), and civil conspiracy against all defendants (Count III).

## I.   **Factual Background**

CCI was engaged in the business of fabricating communications cable assemblies, harnesses and communication-

---

[1] Hunt originally filed this action against CCI as well, but because CCI filed for bankruptcy Hunt voluntarily dismissed CCI as a defendant on January 10, 2011.

related devices, and with the installation of cabling networks and communication-related devices. Compl. ¶ 6. On July 14, 2008, Hunt and CCI executed an Executive Employment Agreement (the "Agreement") through which Hunt accepted the position of Chief Executive Officer of the company. Id. ¶¶ 9-10. Hunt worked as CEO of CCI from July of 2008 until January of 2010. Id. ¶ 18. The Agreement could be terminated with or without cause provided that the party terminating the Agreement gave the other party at least sixty days' prior written notice of termination. Id. ¶ 11. Prior written notice was not required if the Agreement was terminated for cause. Id.

Pursuant to the Agreement, the parties agreed that Hunt would be entitled to eighteen months of severance regardless of whether a termination was with or without cause. Id. ¶ 12. The Agreement dictates that it shall be governed by the laws of the Commonwealth of Pennsylvania and that CCI and Hunt agree to jurisdiction in Chester County, Pennsylvania, "with respect to any proceeding arising out of or relating to [the] Agreement or its subject matter." Id., Ex. A at § 15. CCI and its parent company, HWI Technologies, LLC ("HWI"), maintained office space and Board level records in Pennsylvania from 2008 to 2010. Id. ¶ 15. Hunt avers that he continued to perform many of his duties as

a Company Director and its Chairman from offices in Pennsylvania. Id. ¶ 17. Hunt is a citizen of Delaware. Id. ¶ 1.

In December of 2009, at the insistence of CCI's funding partner, ComVest Capital, LLC, CCI's board of directors sought Hunt's resignation. Id. ¶ 20. On December 28, 2009, the Company's board resolved to seek and accept Hunt's resignation. Id. ¶ 23. Jaggard, Stewart and Clarke were not on the Company's board at that time. Id. Hunt resigned that day, id. at ¶¶ 22-23, and this became effective on January 11, 2010. Id. ¶ 25. Shortly after Hunt resigned, CCI replaced three of the five Directors on its Board of Directors with defendants Jaggard, Stewart, and Clarke, who were all affiliated with ComVest. Id. ¶ 26. Jaggard, Stewart, and Clarke are citizens of Florida. Jaggard Affidavit ¶ 1; Stewart Affidavit ¶ 1; Clarke Affidavit ¶ 1. In late January of 2010, ComVest became the majority owner of HWI and CCI. Id. ¶ 27.

By the terms of the Agreement, CCI was obliged to tender Hunt's severance payment no later than February 10, 2010. Id. at ¶ 29. On April 9, 2010, Hunt filed a demand for arbitration with the American Arbitration Association ("AAA") against CCI seeking recovery of his severance payment and vacation pay. Id. at ¶ 30. On April 22, 2010, the AAA sent a

letter to Hunt and CCI requesting the parties' written consent for the AAA's continued administration of the arbitration because the Agreement's arbitration clause was silent as to a governing arbitration tribunal.  Id. at ¶ 32.  The next day, CCI filed an action in the Thirteenth Judicial Circuit in Hillsborough County, Florida, against Hunt, seeking a declaratory judgment that the Agreement's arbitration provision was not valid.  Id. at ¶ 33 (the "Florida Action").

Hunt initially filed this action in the Court of Common Pleas of Chester County on April 30, 2010.  See generally, plaintiff's Complaint ("this action" or the "Pennsylvania Action").  The defendants removed the case to this Court on the basis of diversity jurisdiction on June 1, 2010 and filed a motion to dismiss the action or transfer it to the Middle District of Florida.  On July 30, 2010, while defendants' motion to dismiss the Pennsylvania Action was pending, CCI filed a Chapter Eleven Voluntary Petition for Relief in the United States Bankruptcy Court for the Middle District of Florida.  On August 6, 2010, CCI filed a Suggestion of Bankruptcy in this action.

On August 11, 2010, CCI moved to transfer the Florida Action to the Bankruptcy Court for the Middle District of Florida.  The Court found that the Florida Action was "related

to" the bankruptcy case, and, on September 9, 2010, granted the motion. MTD, Ex. F.

On August 24, 2010, certain plaintiffs, including Hunt, instituted an adversary proceeding in the Bankruptcy Court that sought to impose personal liability on Stewart, Jaggard, and Clark for their actions relating to CCI. On February 14, 2011, plaintiffs amended the Complaint in the Adversary Proceeding so that Jaggard, Clark, and Stewart, and their companies, are now the only defendants. Id., Ex. G.

On October 12, 2010, Hunt filed a proof of claim in the bankruptcy in which he sought the same severance and vacation pay that he sought in the Pennsylvania Action. MTD, Ex. H. On January 10, 2011, Hunt voluntarily dismissed without prejudice CCI as a defendant. On January 28, 2011, we denied without prejudice defendants' first motion to dismiss and directed defendants to respond anew to the complaint.

Defendants argue that we do not have personal jurisdiction over them because Jaggard, Stewart, and Clarke have never resided in Pennsylvania. Jaggard Affidavit at ¶ 1; Stewart Affidavit at ¶ 1; Clarke Affidavit at ¶ 1. None of them owns property in Pennsylvania. Jaggard Affidavit at ¶ 3; Stewart Affidavit at ¶ 3; Clarke Affidavit at ¶ 3. None of them pays

taxes, maintains a residence, office, bank account or assets in Pennsylvania. Jaggard Affidavit at ¶¶ 4, 7; Stewart Affidavit at ¶¶ 4, 7; Clarke Affidavit at ¶¶ 4, 7. Clarke and Stewart have never traveled to Pennsylvania on CCI business. Stewart Affidavit at ¶ 8; Clarke Affidavit at ¶ 8. Jaggard has traveled to Pennsylvania on behalf of CCI, but not in his role as a director. Jaggard Affidavit at ¶ 9.

Defendants now move to dismiss the case for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), or, in the alternative, to transfer this case to the Middle District of Florida. Defendants also move to dismiss the civil conspiracy claim pursuant to Rule 12(b)(6). Because CCI has been dismissed from this action, we will dismiss each claim against CCI. For the reasons set forth below, we will grant defendants' motion and dismiss the complaint for lack of personal jurisdiction.

## II. Analysis

As noted, defendants Jaggard, Stewart, and Clarke move to dismiss Hunt's case pursuant to Fed. R. Civ. P. 12(b)(2) and (3) or, in the alternative, to transfer this action to the Middle District of Florida pursuant to 28 U.S.C. § 1404. We will first

6

address whether we have personal jurisdiction over the defendants with regard to plaintiff's Wage Payment and Collection Law claim and then with regard to his Civil Conspiracy claim. We need not address plaintiff's breach of contract claim because that claim was only against CCI which has been dismissed from this action as a defendant.

### A. **Personal Jurisdiction**

Pursuant to Rule 12(b)(2), once a defendant has raised a jurisdictional defense, the plaintiff bears the burden of demonstrating a prima facie case that defendant has sufficient contacts with the forum state to establish personal jurisdiction. North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990). "The plaintiff must sustain its burden of proof through sworn affidavits or other competent evidence." Id. (internal quotation marks omitted). A court "reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992), see also Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). A plaintiff may not rely on bare pleadings, however, but must

respond with actual proof once the motion is made.  Patterson v. Fed. Bureau of Investigation, 893 F.2d 595, 603-4 (3d Cir. 1990).

Rule 4(e) of the Federal Rules of Civil Procedure authorizes a district court to exercise personal jurisdiction over a non-resident defendant to the extent allowed by the long-arm statute of the state in which the court sits.  Provident Nat'l Bank v. Cal. Fed. Sav. and Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987).  Pennsylvania's long-arm statute establishes personal jurisdiction over a non-resident defendant to the fullest extent the Due Process Clause of the Fourteenth Amendment allows.  Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).

Personal jurisdiction may exist under either general jurisdiction or specific jurisdiction.  General jurisdiction exists where a defendant has had "continuous and systematic" contacts with the forum state.[2]  Helicopteros Nacionales de

---

[2] Hunt argues that we have general personal jurisdiction over Jaggard, but alleges no facts in his complaint to support this contention, nor does he present any evidence to that effect. Hunt refers to a declaration in his response, but no such declaration is attached thereto.  Hunt only alleges in his response to the motion to dismiss that "[t]his Court has general jurisdiction over Jaggard based on his substantial and continuous contacts with Pennsylvania -- namely, his board positions with both HWI and ClearPoint."  Pl. Resp. at 10.  Thus, Hunt has not carried his burden to show that we have general personal jurisdiction over Jaggard.

Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction exists where the plaintiff's cause of action arises out of the defendants' contact with the forum state such that the defendants "should reasonably anticipate being haled into court" in that forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The constitutionality test for specific jurisdiction has two parts. First, the defendant must have had constitutionally sufficient "minimum contacts" with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Second, exercising jurisdiction must also comport with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Satisfaction of the first prong depends on whether the defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "Due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised." Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993).

### 1. **Pennsylvania's Wage Payment and Collection Law**

Hunt argues that we have specific jurisdiction over the three defendants for his Pennsylvania Wage Payment and Collection Law ("WPCL") claim. Pl. Resp. at 10. Defendants argue that we do not have <u>in personam</u> jurisdiction over them for this claim because Hunt does not allege that defendants violated the WPCL in Pennsylvania.

The claim for unlawful withholding is statutory. 43 P.S. § 260.9a. Violations of a statute must have been committed in Pennsylvania for the Court to exercise jurisdiction over out-of-state defendants. <u>See</u> 42 Pa.C.S. § 5322(a)(10). Hunt does not allege that defendants' violations of the WPCL occurred in Pennsylvania. Instead, Hunt argues that defendants "directed" their tortious conduct at Pennsylvania under the three-part effects test first articulated in <u>Calder v. Jones</u>, 465 U.S. 783, 788-89 (1984), because Hunt <u>worked</u> in Pennsylvania. Pl. Resp. at 12.

But courts in this Circuit have previously ruled that violations of the WPCL do not amount to tortious conduct and do not justify the assertion of personal jurisdiction over non-resident corporate officers where the officers have no personal affiliating circumstances with the forum state. <u>Central</u>

Pennsylvania Teamster Pension Fund v. Burten, 634 F. Supp. 128, 132 (E.D. Pa. 1986) (finding that analogizing statutory violations to the commission of a tort creates a significant problem when plaintiffs seek to base jurisdiction solely upon the long-arm statute); Bowers v. NETI Technologies, Inc., 690 F. Supp. 349, 358 (E.D. Pa. 1988) (finding that exercise of jurisdiction over corporate officers under the WPCL does not comport with due process). Hunt cites no authority that suggests that violations of the WPCL are torts. Thus, the Calder effects test, which only applies to torts, does not apply here.

In addition, Hunt does not claim that the alleged violations of the WPCL were committed within the Commonwealth. In fact, Hunt's wages were paid from a Florida account and deposited electronically into a New Jersey account. MTD, Ex. B ¶ 16.

Hunt claims that because CCI signed the Agreement with him -- and this contract contains a choice of law provision and a consent to jurisdiction provision (prior to the defendants becoming directors of CCI) -- the harm was foreseeable and the defendants are personally liable. Pl. Resp. at 13. But even if defendants saw clearly and specifically that their conduct on behalf of CCI would cause harm to Hunt in Pennsylvania,

11

"foreseeability alone is not enough for personal jurisdiction under the Due Process Clause." Bowers, 690 F. Supp. at 359 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)).

> Without more, foreseeability of harm and actual harm within the state are not sufficient to permit exercise of jurisdiction over corporate officers for their participation in corporate activity. Were the law otherwise, officers of corporations operating in several states would be faced with a Hobson's choice. They must either disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum.

Id. (quoting PSC Professional Serv. Group. v. Am. Digital Systems, 555 F. Supp. 788, 793 (E.D. Pa. 1983)) (internal quotation marks omitted).

Hunt cites no authority to support his point, nor any authority that defendants are liable under the WPCL. Thus, we find that we do not have in personam jurisdiction over the defendants with regard to Hunt's WPCL claim, and we will grant defendants' motion to dismiss this claim. Because we find that Hunt has failed to show any violation of the WPCL, we need not address his arguments regarding the corporate shield doctrine, which, in any event, is not relevant here. Thus, we find that the defendants have not had sufficient minimum contacts with

Pennsylvania for us to exercise personal jurisdiction over them for Hunt's WPCL claim.

### 2. Civil Conspiracy

Hunt argues that we have specific jurisdiction over the three defendants for his civil conspiracy claim. Pl. Resp. at 15. Defendants contend that although the Calder effects test applies, Hunt has not shown that the effect of the alleged civil conspiracy was aimed at, and felt in, Pennsylvania. MTD at 11.

Civil conspiracy is an intentional tort. Walker v. North Wales Borough, 395 F. Supp. 2d 219, 233 (E.D. Pa. 2005). The tort of civil conspiracy under Pennsylvania law requires a plaintiff to show that two or more persons agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Id. The parties agree that the Calder effects test applies for civil conspiracy. MTD at 11; Pl. Resp. at 15. The test has three elements: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the

13

focal point of the tortious activity." IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998). To make out the third prong of the test, Hunt must show that the defendants knew that he would suffer the brunt of the harm caused by the tortious conduct in Pennsylvania, and point to specific activity indicating that the defendants expressly aimed its tortious conduct at the forum. Id. at 266.

Hunt avers in his complaint that defendants conspired to deny him receipt of his severance and vacation pay and to squeeze him out of CCI through the appointment of a Special Committee that silenced his rights as an owner and Director of CCI. Compl. ¶ 44. Hunt claims that "[d]efendants have undertaken several overt acts in pursuit of their common purpose, including: (i) appointment of the Special Committee and (ii) filing the Complaint." Id. ¶ 45. Hunt also avers that "[a]s a result of Defendants' conspiratorial conduct, Hunt has suffered damages including, without limitation: (i) nonpayment of his severance payments and vacation pay and (ii) incurring legal costs and fees." Id. ¶ 46. Hunt claims that because defendants knew that he "worked in an office in Pennsylvania for CCI and HWI, and that the Agreement contained a Pennsylvania choice of law [provision]," defendants directed their tortious activity at

14

Pennsylvania. Pl. Resp. at 13. Hunt argues that defendants "sat on the board of a company with its principal place of business in Pennsylvania (HWI -- the sole shareholder of CCI), and withheld payments under an Agreement with a Pennsylvania consent to jurisdictional and choice of law provision." Id. at 14.

But Hunt is a citizen of Delaware, not Pennsylvania. He cannot claim to have "felt" the brunt of the alleged tort in the Commonwealth such that it can be said that Pennsylvania was the focal point of the harm. In addition, it has already been established that CCI paid Hunt from an account in Florida into an account in New Jersey -- the defendants' alleged failure to pay Hunt cannot be said to be directed at Pennsylvania. Any legal costs and fees that Hunt incurred were incurred in Delaware. Defendants filed their complaint in Florida, not Pennsylvania. Finally, Hunt does not allege any facts about where defendants formed the Special Committee. Hunt does not provide any support for his contention that the mere fact that the Agreement, which has a Pennsylvania choice of law provision, means that we have in personam jurisdiction over these defendants under the Calder effects test. Hunt has failed to allege facts to satisfy the second and third elements of the effects test. We therefore find that Hunt has failed to show that defendants have had sufficient

15

minimum contacts with Pennsylvania for us to exercise personal jurisdiction over them for his civil conspiracy claim.

Because Hunt has failed to show that the defendants had sufficient minimum contacts with Pennsylvania for either his WPCL or his civil conspiracy claim, the assertion of personal jurisdiction over the defendants would, under these circumstances, not comport with "traditional notions of fair play and substantial justice." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (internal quotation marks omitted). Even though CCI agreed in signing the Agreement with Hunt that it would be subject to jurisdiction in Pennsylvania, this is not enough for personal jurisdiction to attach for either the WPCL claim or the civil conspiracy claim on this set of facts. Thus, we find that Jaggard, Stewart, and Clarke have not purposefully availed themselves of the privilege of conducting activities in Pennsylvania.

## III. Conclusion

We find that we do not have either specific or general personal jurisdiction over the defendants for any of Hunt's claims, and we will grant defendants' motion to dismiss pursuant to Rule 12(b)(2). Because we grant defendants' Rule 12(b)(2)

motion to dismiss, we need not consider defendants' (12)(b)(3) motion, their 12(b)(6) motion to dismiss the civil conspiracy claim, or their alternative motion to transfer venue.  In addition, because we grant the Rule 12(b)(2) motion to dismiss with regard to both the WPCL claim and the civil conspiracy claim, we need not consider Hunt's arguments regarding what he calls "pendent" jurisdiction.  Finally, because defendants' proposed reply provides necessary clarifications of the law, we will grant their motion for leave to file it.  We will dismiss Hunt's complaint with prejudice.

BY THE COURT:

\_\s\Stewart Dalzell